IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-408-D

| | |
|---|---|
| TIGRESS SYDNEY ACUTE MCDANIEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CREDIT MANAGEMENT LP, ) | |
| CHARTER COMMUNICATIONS, INC. ) | |
| d/b/a SPECTRUM, ) | |
| ) | |
| Defendants. ) | |

On June 1, 2023, Tigress McDaniel ("McDaniel," or "plaintiff"), proceeding pro se, filed a complaint in Wake County District Court against Credit Management LP ("CMLP") and Charter Communications, Inc. ("Spectrum") (collectively "defendants"). See [D.E. 1-1] 1. On July 26, 2023, defendants jointly removed the case to this court [D.E. 1]. On August 10, 2023, McDaniel moved for leave to amend her complaint to add the federal pleading of claims [D.E. 17]. On August 15, 2023, McDaniel filed a second identical motion for leave to amend [D.E. 18]. On August 18, 2023, McDaniel filed an amended complaint [D.E. 21]. On August 23, 2023, CMLP and Spectrum responded in opposition to McDaniel's motions to amend [D.E. 22, 23]. On September 1, 2023, Spectrum moved to dismiss the amended complaint for failure to state a claim and lack of subject-matter jurisdiction [D.E. 25] and filed a memorandum in support [D.E. 26]. The court notified McDaniel of the motion, the consequences of failing to respond, and the response deadline. See [D.E. 27]; Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). McDaniel did not file a timely response in opposition. See Local Civ. R. 7.1(f)(1).

On October 5, 2023, McDaniel moved for an extension of time to respond to Spectrum's motion to dismiss [D.E. 28] and filed her untimely response [D.E. 29]. On October 16, 2023, Spectrum responded in opposition to McDaniel's motion for an extension of time to respond to the motion to dismiss [D.E. 32]. The same day, McDaniel filed affidavits in support of her motion for extension of time [D.E. 33–35].

On October 12, 2023, CMLP moved for judgment on the pleadings [D.E. 30] and filed a memorandum in support [D.E. 31]. On November 2, 2023, McDaniel responded in opposition [D.E. 36]. The same day, McDaniel moved for leave to file a third amended complaint [D.E. 37]. On November 16, 2023, CMLP replied [D.E. 38]. The same day, CMLP responded in opposition to McDaniel's motion for leave to file a third amended complaint [D.E. 39]. On November 22, 2023, Spectrum also responded in opposition to McDaniel's motion [D.E. 40].

As explained below, the court denies McDaniel's first two motions to amend as moot, denies her third motion to amend as futile, denies McDaniel's motion for extension of time, grants in part Spectrum's motion to dismiss the amended complaint, grants CMLP's motion for judgment on the pleadings, and declines to exercise supplemental jurisdiction over McDaniel's UCC claim against Spectrum.

I.

McDaniel is a notorious pro se litigant and the United States District Court for the Western District of North Carolina has imposed a pre-screening review system for her filings. See, e.g., McDaniel v. Green Dot Corp., No. 3:23-cv-21, 2023 WL 2254581, at *1 & n.1 (W.D.N.C. Feb. 27, 2023) (unpublished), affirmed, No. 23-1125, No. 23-1218, 2023 WL 5625142 (4th Cir. Aug. 21, 2023) (per curiam) (unpublished). On September 4, 2022, McDaniel signed up for Spectrum Gig WI-Fi and enrolled in automatic payments. See Am. Compl. [D.E. 21] ¶ 10(c). On September 9,

2

2022, McDaniel complained to Spectrum about poor wifi speeds. See id. at ¶ 10(e). Spectrum sent a technician to inspect the issue, who reportedly fixed the problem. See id. at ¶ 10(f). On September 20, 2022, unsatisfied with the service, McDaniel requested a downgrade to the base Ultra service. See id. at ¶ 10(g).

During October and November 2022, Spectrum attempted to debit $110.39 from McDaniel's account for a purported balance due. See id. at ¶¶ 10(k), 10(m)–10(n). The auto payments failed for insufficient funds. See id. at ¶ 10(o). Because of non-payment, Spectrum assessed late fees, bringing McDaniel's outstanding balance to $174.68. See id. at ¶¶ 10(p)–10(r). McDaniel alleges that because Spectrum provided inadequate service, she should not have to pay Spectrum for any internet service charges. See id. at ¶ 10(q).

In October 2022, McDaniel obtained a new unnamed internet service provider. See id. at ¶ 10(s). Nonetheless, in October and November 2022, she kept the modem connected, believing that she had Ultra service. See id. at ¶ 10(t). In December 2022, Spectrum ended internet service for non-payment. See id. at ¶ 10(u). Subsequently, McDaniel cancelled her Spectrum service. See id. at ¶ 10(v). On January 14, 2023, McDaniel asked Spectrum to remove the returned check fee from her unpaid account. See id. at ¶ 10(x)–(y). Spectrum refused. See id. at ¶ 10(z). In March 2023, McDaniel initiated arbitration against Spectrum. See id. at ¶ 10(aa).

On May 25 or 26, 2023, McDaniel received an adverse action notice for a loan application. See id. at ¶¶ 10(cc), 11(ee). On May 26, 2023, Experian reported a bad debt notice for a $192-balance collection account. See id. at ¶ 11(ff). On May 31, 2023, McDaniel called CMLP to dispute the collection account. See id. at ¶ 11(hh).[1]

---

[1] During this call, McDaniel held herself out as a lawyer. See id. at ¶ 11(gg). McDaniel was not licensed to practice law. See id. at 3. A nonlawyer not admitted to practice law must not hold

3

In count one, McDaniel alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, against both defendants. See id. at 8–9. In count two, McDaniel alleges gross negligence against both defendants. See id. at 10–11. In count three, McDaniel alleges violations of North Carolina's implied warranty of merchantability, based on Spectrum's alleged failure to meet the FCC benchmark internet speed regulations. See id. at 12–13. McDaniel seeks compensatory damages, punitive damages, and injunctive relief. See id. at 14.

Spectrum moves to dismiss McDaniel's amended complaint. See [D.E. 25, 26]; Fed. R. Civ. Proc. 12(b)(1), 12(b)(6). CMLP moves for judgment on the pleadings. See [D.E. 30, 31]; Fed. R. Civ. Proc. 12(c).

II.

When a party fails to file a response by a specified deadline, for good cause, the court may extend the time if the failure was because of excusable neglect. See Fed. R. Civ. Proc. 6(b). McDaniel fails to establish good cause or excusable neglect to warrant an extension of time to respond to Spectrum's motion to dismiss. McDaniel allegedly missed the deadline due to emotional distress from her uncle's death on September 17, 2023. See [D.E. 28] ¶¶ 2–3. McDaniel's bereavement, however, did not preclude McDaniel from timely filing a response on September 22, 2023. Indeed, McDaniel describes her extensive research and filings concerning a separate legal matter in North Carolina state court during this time period. See [D.E. 28] ¶¶ 4–7; [D.E. 33] ¶¶ 1–13. Although McDaniel now contends that the dates in these filings were scriveners errors, see [D.E. 33] ¶ 10, the court rejects the explanation. Likewise, the court rejects McDaniel's argument

---

herself out to the public or otherwise that she is admitted to practice law. See N.C. R. Pro. Conduct 5.5(b) & cmt. 2. The court directs the Clerk of Court to send this order to the North Carolina State Bar for further investigation.

4

that the discovery of "atrocious attorney and judicial fraud and conspiracy" against her in state court caused her to miss the deadline in this case. See [D.E. 28] ¶¶ 4–7. McDaniel's extensive litigation activities leading up to the filing deadline in this case demonstrates that an extension of time is not warranted. Thus, the court denies McDaniel's motion for an extension of time.

Alternatively, on October 5, 2023, McDaniel filed her untimely response in opposition to Spectrum's motion to dismiss. See [D.E. 29]. The court has reviewed that filing in considering Spectrum's motion to dismiss.

As for the McDaniel's motion for leave to file a third amended complaint, the court denies the motion as futile. McDaniel waited 63 days after Spectrum filed its motion to dismiss the amended complaint and 29 days after McDaniel responded in opposition to Spectrum's motion. See [D.E. 40] 7–8. Moreover, the third amended complaint fails to remedy the deficiencies that doom McDaniel's alleged claims. Thus, the third amended complaint is futile, and the court denies McDaniel's motion to file a third amended complaint. See, e.g., Equal Rights Cntr. v. Niles Bolton Associates, 602 F.3d 597, 603 (4th Cir. 2010); Laber v. Harvey, 438 F.3d 404, 426–29 (4th Cir. 2006) (en banc).

III.

To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of

5

Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166; Occupy Columbia v. Haley, 738 F.3d 107, 117 n.7 (4th Cir. 2013). Additionally, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); see, e.g., Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007).

6

The same standard applies under Rule 12(b)(6) and Rule 12(c); therefore, a rule 12(c) motion tests whether a pleading is legally and factually sufficient. See, e.g., United States v. Cox, 743 F. App'x 509, 511 (4th Cir. 2018) (per curiam) (unpublished); Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "Thus judgment on the pleadings requires a court to accept all well-pleaded allegations as true and draw all reasonable factual inferences from those facts in the non-moving party's favor." Cox, 743 F. App'x at 511 (cleaned up); see Drager, 741 F.3d at 474; Edwards, 178F.3d at 244. A court need not accept a pleading's legal conclusions drawn from the facts. See Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (quotation omitted). Judgment on the pleadings is appropriate when the well-pleaded factual allegations in the complaint and the uncontroverted allegations in the answer, along with any documents attached to the pleadings, show that the court can decide the case as a matter of law. See Massey, 759 F.3d at 353; Drager, 741 F.3d at 474; Firemen's Ins. Co. v. Glen-Tree Invs., LLC, No. 7:11-CV-59, 2012 WL 4191383, at *4 (E.D.N.C. Sept. 19, 2012) (unpublished). If a non-moving party demonstrates that there are disputed issues of material fact, "the motion should be denied or, if the motion is converted to one for summary judgment, the parties should be given 'a reasonable opportunity to present all the material that is pertinent to the motion.'" Silva v. Connected Invs., Inc., No. 7:21-CV-74, 2021 WL 4222592, at *2 (E.D.N.C. Sept. 16, 2021) (unpublished) (quoting Fed. R. Civ. P. 12(d)); see Nationwide Mut. Ins. Co. v. Wahome, No. 5:15-CV-601, 2018 WL 4689443, at *4 (E.D.N.C. Sept. 28, 2018) (unpublished).

In count one, McDaniel alleges that Spectrum and CMLP violated 15 U.S.C. § 1681s-2(a) by furnishing inaccurate information to a consumer credit reporting agency. See Am. Compl. at 8–9;

7

cf. 15 U.S.C. § 1681s-2; Asby v. Chase Bank USA, N.A., No. 4:15-CV-7, 2015 WL 5010014, at *2 (E.D.N.C. Aug. 21, 2015) (unpublished). No private right of action, however, exists under 15 U.S.C. § 1681s-2(a). See, e.g., 15 U.S.C. §§ 1681s-2(c)(1), (d); Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008); Craighead v. Nissan Motor Acceptance Corp., No. 1:10cv981, 2010 WL 5178831, at *4 (E.D. Va. Dec. 14, 2010) (unpublished), aff'd, 425 F. App'x. 197 (4th Cir. 2011) (per curiam) (unpublished); accord Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012) (per curiam); Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 615–16 (6th Cir. 2012); Sanders v. Mountain Am. Fed. Credit Union, 689 F.3d 1138, 1147 (10th Cir. 2012); Purcell v. Bank of Am., 659 F.3d 622, 623 (7th Cir. 2011); SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009); Weber v. Specialized Loan Servicing, LLC, 627 F. Supp. 3d 538, 545 (E.D.N.C. 2022). Thus, the court dismisses McDaniel's FCRA claims under section 1681s-2(a).

As for McDaniel's reference to 15 U.S.C. § 1681h(e) in the amended complaint, the provision provides no comfort to McDaniel. That FCRA section applies to credit reporting agencies, which Spectrum and CMLP are not. See 15 U.S.C. §§ 1681g, 1681h; Ross v. Fed. Deposit Ins. Corp., 625 F.3d 808, 814 (4th Cir. 2010); Rogers v. Keffer, Inc., 243 F. Supp. 3d 650, 659 (E.D.N.C. 2017). Thus, the court dismisses McDaniel's FCRA claims against Spectrum and grants CMLP's motion for judgment on the pleadings concerning McDaniel's FCRA claims.

Alternatively, McDaniel fails to plausibly allege a claim under 15 U.S.C. §§ 1681s-2(a) or 2(b). Under section 1681s-2(a) a plaintiff must prove that (1) the plaintiff-consumer notified the furnisher of specific inaccurate information and (2) that the information was in fact inaccurate. See 15 U.S.C. § 1681s-2(a). To state an FCRA claim against Spectrum, McDaniel must plausibly allege that Spectrum furnished information to a credit reporting agency that she specifically told Spectrum

8

was factually inaccurate. McDaniel plausibly alleges that she disputed at least some charges in her billing account with Spectrum. See Am. Compl. ¶ 10. McDaniel, however, does not plausibly allege that Spectrum furnished information related to that billing account to Credit Sesame or Experian. For example, McDaniel alleges that Spectrum only furnished the account information to CMLP, "the third party collection agency." Id. at ¶ 11(uu). McDaniel also alleges that CMLP furnished the information to Experian. See id. at ¶ 11(ff). Without plausibly alleging that Spectrum communicated inaccurate information to a credit reporting agency, McDaniel's FCRA claim against Spectrum fails. See, e.g., Ross, 625 F.3d at 814.

Likewise, other than alleging that she was unsatisfied with the service, requested service downgrade, and later requested a returned check fee to be removed, McDaniel fails to plausibly allege that she notified Spectrum or CMLP of specific information that was inaccurate regarding the outstanding bill. The amended complaint fails to plausibly allege that McDaniel had reasonable cause to believe that the bill was not validly outstanding. Cf. Am. Compl. ¶¶ 10(g)–10(j), 10(y), 10(z). Thus, McDaniel fails to state a claim under 15 U.S.C. § 1681s-2(a).

As for 15 U.S.C. § 1681s-2(b), subsection (b) only applies when the furnisher of information receives notice from the consumer reporting agency of a dispute. See Spencr v. Suntrust Mortg., Inc., No. 1:15-CV-37, 2015 WL 5774657, at *11 (M.D.N.C. Sept. 30, 2015) (unpublished). McDaniel does not plausibly allege that any consumer reporting agency notified Spectrum or CMLP of a dispute. In her response memorandum and proposed third amended complaint, McDaniel alleges that she communicated her dispute to the consumer reporting agencies. See [D.E. 36] 2; [D.E. 37-1] ¶ 11(ss). This twice revised allegation does not change the analysis, however, because section 1681s-2(b) requires that the consumer reporting agency communicate that dispute to the furnisher of information. See, e.g., Mavilla v. Absolute Collection Serv., Inc., No. 5:10-CV-0412,

9

2013 WL 140046, at *6 (E.D.N.C. Jan. 10, 2013) (unpublished). Thus, McDaniel fails to state a claim under 15 U.S.C. § 1681s-2(b). See id.

As for McDaniel's gross negligence claim and request for punitive damages, the FCRA preempts the gross negligence claim and request for punitive damages. See, e.g., Ross, 625 F.3d at 813; Rogers, 243 F. Supp. 3d at 658; 15 U.S.C. §§ 1681h(e); 1681t(b)(1)(F). Under 15 U.S.C.§ 1681t(b)(1)(F), "[n]o requirement or prohibition may be imposed under the laws of any [s]tate . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." Ross, 625 F.3d at 813. "Section 1681s–2 describes the responsibilities of those who report credit information to CRAs." Id. Under section 1681s–2, those who report credit information to credit reporting agencies have a duty to furnish accurate information, "which includes correcting any errors in reporting." Id.; see 15 U.S.C. § 1681s–2(a)(1)–(2). Section 1681s–2(b) also states that persons providing information to credit reporting agencies have a duty to investigate any disputed information and to correct any errors. See Ross, 625 F.3d at 813. Because McDaniel's claims against Spectrum and CMLP arise from the alleged furnishing of inaccurate information to a credit reporting agency, McDaniel's claims "run[] into the teeth of the FRCA preemption provision." Misel v. Green Tree Servicing, LLC, 782 F. Supp. 2d 171, 175 (E.D.N.C. 2011). Furthermore, because Spectrum and CMLP are not credit reporting agencies, section 1681h(e) cannot help McDaniel avoid preemption. See, e.g., id. Thus, the court dismisses McDaniel's gross negligence claim and request for punitive damages against Spectrum and grants CMLP's motion for judgment on the pleadings.

Finally, having rejected McDaniel's federal claims, the court declines to exercise supplemental jurisdiction over her UCC claim against Spectrum. See Am. Compl. ¶ 10(e). A court

10

may decline to exercise supplemental jurisdiction over a state-law claim when (1) "the claim raises a novel or complex issue of State law;" (2) "the claim substantially predominates over" the federal claim or claims; (3) the court has "dismissed all claims over which it has original jurisdiction;" or (4) other "exceptional circumstances" present "compelling reasons for declining jurisdiction." 28 U.S.C. §§ 1367(c)(1)–(4). Additionally, a court may decline to exercise supplemental jurisdiction when "values of economy, convenience, fairness, and comity" make retaining jurisdiction inappropriate. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988), superseded on other grounds by 28 U.S.C. § 1447(c); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001); Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995). Eliminating all federal claims before trial generally suffices to decline supplemental jurisdiction over pendent state-law claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7; see Shanaghan, 58 F.3d at 110 ("Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."); see also Walsh v. Mitchell, 427 F. App'x 282, 283 (4th Cir. 2011) (per curiam) (unpublished); Root v. Cnty. of Fairfax, 371 F. App'x 432, 435 (4th Cir. 2010) (per curiam) (unpublished).

The court has reviewed the entire record and governing law. The court declines to exercise supplemental jurisdiction over McDaniel's UCC state-law claim against Spectrum. Thus, the court dismisses without prejudice McDaniel's UCC claim against Spectrum.

11

## IV.

In sum, the court DENIES as moot plaintiff's motions to amend the complaint [D.E. 17, 18], DENIES plaintiff's motion for extension of time to file a response [D.E. 28], DENIES plaintiff's motion for leave to file a third amended complaint [D.E. 37], GRANTS IN PART defendant Spectrum's motion to dismiss [D.E. 25], and GRANTS defendant CMLP's motion for judgment on the pleadings [D.E. 30]. The court DISMISSES WITH PREJUDICE plaintiff's federal claims in her amended complaint, DECLINES to exercise supplemental jurisdiction over plaintiff's UCC claim against Spectrum, and DISMISSES WITHOUT PREJUDICE plaintiff's UCC claim against Spectrum. The clerk shall close the case and SEND this order to the North Carolina State Bar for further investigation of McDaniel.

SO ORDERED. This 8 day of January, 2024.

JAMES C. DEVER III
United States District Judge